IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

_____
                                                          )
FEDERAL TRADE COMMISSION and        )
STATE OF MAINE,                                     )
                                                          )    Case No. 2:18-cv-00050-NT
           Plaintiffs,                                   )
                                                          )    **STIPULATED ORDER FOR**
           v.                                             )    **PERMANENT INJUNCTION AND**
                                                          )    **MONETARY JUDGMENT**
MARKETING ARCHITECTS, INC.,           )
                                                          )
           Defendant.                                 )
_____)

     Plaintiffs, the Federal Trade Commission ("Commission" or "FTC") and the State of Maine, as represented in this matter by the Office of the Attorney General of Maine ("Maine AG") (hereafter "Plaintiffs"), filed a Complaint for Permanent Injunction and Other Equitable Relief against Defendant pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and pursuant to Section 209 of the Maine Unfair Trade Practices Act ("Maine UTPA"), 5 M.R.S.A. § 209, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendant's acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, and in violation of Section 207 of the Maine UTPA, 5 M.R.S.A. § 207, in connection with the advertising, marketing, distribution, and sale of purported weight-loss products.

     The Commission, the State of Maine, and Defendant stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendant participated in unfair and deceptive acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, and in violation of Section 207 of the Maine UTPA, 5 M.R.S.A. § 207, in connection with the advertising, marketing, distribution, and sale of purported weight-loss products.

3.      Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.      Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5.      Defendant and Plaintiffs waive all rights to appeal or otherwise challenge or contest the validity of this Order.

**DEFINITIONS**

For the purpose of this Order, the following definitions apply:

1.      "**Billing Information**" means any data that enables any person to access a customer's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

2.      "**Charge**," "**charged**," or "**charging**" means any attempt to collect money or other consideration from a consumer, including but not limited to causing Billing Information to be submitted for payment, including against the consumer's credit card, debit card, bank account, telephone bill, or other account.

2

3.      "**Clear(ly) and Conspicuous(ly)**" means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

A.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means;

B.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood;

C.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it;

D.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable;

E.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears;

F.     The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications;

G.     The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication; and

H.     When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

4.     "**Close Proximity**" means that the disclosure is very near the triggering representation.  For example, a disclosure made through a hyperlink, pop-up, interstitial, or other similar technique is not in close proximity to the triggering representation.

5.     "**Covered Product**" means any  Dietary Supplement, Food, or Drug purported, designed, or intended to cause or assist in causing weight loss, fat loss, inch loss, or an increase in metabolism, including AF Plus and Final Trim.

6.     "**Defendant**" means Marketing Architects, Inc. and its successors and assigns.

7.     "**Dietary Supplement**" means:

A.     Any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or

B.     Any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any

4

ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or the diet.

8. "**Drug**" means:

A. Articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them;

B. Articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals;

C. Articles (other than food) intended to affect the structure or any function of the body of humans or other animals; or

D. Articles intended for use as a component of any article specified in (A), (B), or (C);

but does not include devices or their components, parts, or accessories.

9. "**Essentially Equivalent Product**" means a product that contains the identical ingredients, except for inactive ingredients (*e.g.*, binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (*e.g.*, orally, sublingually), as the Covered Product; *provided that* the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

10. "**Food**" means:

A. Any article used for food or drink for humans or other animals;

B.      Chewing gum; and

C.      Any article used for components of any such article.

11.      "**Including**" means including but not limited to.

12.      "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

13.      "**Person**" means a natural person, an organization, or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

14.      "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of any product, service, plan, or program by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

## I.

## BANNED WEIGHT-LOSS CLAIMS

**IT IS ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Dietary Supplement, OTC drug, patch, cream, wrap, or other product worn on the body or rubbed into the skin, are permanently restrained and enjoined from making, or assisting others in

making, in any manner, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation that such product:

A.    Causes weight loss of two pounds or more a week for a month or more without dieting or exercise;

B.    Causes substantial weight loss no matter what or how much the consumer eats;

C.    Causes permanent weight loss;

D.    Blocks the absorption of fat or calories to enable consumers to lose substantial weight;

E.    Safely enables consumers to lose more than three pounds per week for more than four weeks;

F.    Causes substantial weight loss for all users; or

G.    Causes substantial weight loss by wearing a product on the body or rubbing it into the skin.

## II.

**PROHIBITED REPRESENTATIONS:  OTHER WEIGHT-LOSS CLAIMS**

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promoting, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, other than representations covered under the Section of this Order entitled Banned Weight-Loss Claims, that, in humans, such Covered Product:

7

A.      Causes or assists in causing weight loss, including any specific amount of weight loss;

B.      Causes or assists in causing fat loss, including any specific amount of fat loss;

C.      Boosts or increases metabolism; or

D.      Cures, mitigates, or treats any disease;

unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence substantiating that the representation is true.  For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  Such testing must be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing.  Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

*Provided, however,* that in instances where the Defendant, on behalf of a client, creates advertising or brokers ad placements for a Covered Product, or participates or assists others in creating advertising or brokering ad placements for a Covered Product, and does not:  (1) have an ownership interest in such Covered Product; (2) own or license the right to advertise such Covered Product; or (3) derive royalties or payments generated from the sale of such Covered Product, it shall be a defense hereunder if it can establish, after reasonable inquiry, Defendant

neither knew nor had reason to know that any representation covered by this Section was not supported by competent and reliable scientific evidence as required under this Section.

**III.**

**PROHIBITED REPRESENTATIONS: OTHER HEALTH-RELATED CLAIMS**

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation about the health benefits, safety, performance or efficacy of any Covered Product, other than representations covered under the Sections of this Order entitled Banned Weight-Loss Claims and Prohibited Representations: Other Weight-Loss Claims, unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates;

(2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true.  Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

*Provided, however,* that in instances where the Defendant, on behalf of a client, creates advertising or brokers ad placements for a Covered Product, or participates or assists others in creating advertising or brokering ad placements for a Covered Product, and does not:  (1) have an ownership interest in such Covered Product; (2) own or license the right to advertise such Covered Product; or (3) derive royalties or payments generated from the sale of such Covered Product, it shall be a defense hereunder if it can establish, after reasonable inquiry, Defendant neither knew nor had reason to know that any representation covered by this Section was not supported by competent and reliable scientific evidence as required under this Section.

## IV.

### PROHIBITED REPRESENTATIONS REGARDING TESTS, STUDIES, OR INGREDIENTS

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication, including through the use of any product or program name, endorsement, depiction, or illustration:

A.     That any Covered Product is clinically proven to cause weight loss;

B.     That the performance or benefits of any Covered Product are scientifically or

clinically proven or otherwise established; or

C.     The existence, contents, validity, results, conclusions, or interpretations of any

test, study, or research.

## V.

## FDA-APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order prohibits Defendant,

Defendant's officers, agents, employees, and attorneys, or all other persons in active concert or

participation with any of them from:

A.     For any drug, making a representation that is approved in labeling for such drug

under any tentative final or final monograph promulgated by the Food and Drug

Administration, or under any new drug application approved by the Food and

Drug Administration; and

B.     For any product, making a representation that is specifically authorized for use in

labeling for such product by regulations promulgated by the Food and Drug

Administration pursuant to the Nutrition Labeling and Education Act of 1990 or

permitted under Sections 303-304 of the Food and Drug Administration

Modernization Act of 1997.

## VI.

## PROHIBITED MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees,

and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or sale of any good or service, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, in any manner, expressly or by implication, including through the use of any product or program name, endorsement, depiction, or illustration, any material fact, including:

    A.     That purported users of the goods or services who appear in advertising Defendant creates or disseminates obtained a reported result through the use of those goods or services; and

    B.     That paid commercial advertising is independent programming, including independent, educational programming; an objective news report; an effort to recruit subjects for a study or trial; or is sponsored by the government.

*Provided*, *however*, that for the purposes of Subsection A of this Section entitled "Prohibited Misrepresentations," in instances where Defendant, on behalf of a client, creates or develops advertising, or participates or assists in the creation or development of advertising for a good or service, including but not limited to drafting all or part of a radio or television script or producing a radio or television commercial, and does not have an ownership interest in such good or service or own or license the right to advertise such good or service, Defendant will have complied with its obligations under this Section if it can establish that, after reasonable inquiry, it neither knew nor had reason to know that any representation covered under Subsection A was false or misleading.

## VII.

## OTHER PROHIBITED MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication:

A.    Any cost to the consumer to purchase, receive, use, or return the initial good or service;

B.    That the consumer will not be Charged for any good or service;

C.    That a good or service is offered on a free, risk-free, no-risk, or no-obligation basis;

D.    That a good or service is offered on a trial, sample, bonus, or gift basis, or words of similar import, denoting or implying  that the recipient of the offer has no obligation to affirmatively act in order to avoid Charges, including where a Charge will be assessed pursuant to the offer unless the consumer takes affirmative steps to prevent or stop such a Charge; and

In connection with promoting or offering for sale any good or service with a Negative Option Feature:

E.    That the consumer can obtain a good or service for a processing, service, shipping, handling, or administrative fee with no further obligation;

F.    The purpose(s) for which the consumer's Billing Information will be used; and

G.    The  date or timeframe within which the consumer must act to avoid incurring any

obligation or be Charged unless the consumer takes an affirmative action on the

Negative Option Feature.

Compliance with this Section is separate from, and in addition to, the disclosures required by the Sections entitled, "Required Disclosures" and "Obtaining Express Informed Consent." *Provided*, *however*, that for the purposes of this Section entitled "Other Prohibited Misrepresentations," in instances where Defendant, on behalf of a client, creates or develops advertising, or participates or assists in the creation or development of advertising for a good or service, including but not limited to drafting all or part of a radio or television script or producing a radio or television commercial, and does not have an ownership interest in such good or service or own or license the right to advertise such good or service, Defendant will have complied with its obligations under this Section if it can establish that, after reasonable inquiry, it neither knew nor had reason to know that any representation covered under this Section was false or misleading.

## VIII.

## REQUIRED DISCLOSURES

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from:

A.      Representing directly or indirectly, expressly or by implication, in connection with the advertising of any good or service, that such good or service is being offered on a free, risk-free, no-risk, or no-obligation basis, without disclosing

Clearly and Conspicuously, and in Close Proximity to, any such representation:

1.       The extent to which the consumer must take affirmative action(s) to avoid any Charges:  (a) for the offered good or service; (b) of an increased amount after the trial or promotional period ends; or (c) on a recurring basis;

2.       The total cost (or range of costs) the consumer will be Charged, including all shipping, handling, and processing fees and Charges, and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges; and

3.       The date or timeframe by which the consumer must affirmatively act in order to stop all recurring Charges; and

B.       Obtaining Billing Information from a consumer for any transaction involving a good or service that includes a Negative Option Feature, or that is promoted as being offered as or made available on a "free," "risk-free," "no risk," "no obligation," "trial," "sample," "bonus," or "gift" basis, without first disclosing, Clearly and Conspicuously, and in Close Proximity to where a consumer provides Billing Information:

1.       The extent to which the consumer must take affirmative action(s) to avoid any Charges:  (a) for the offered good or service; (b) of an increased amount after the trial or promotional period ends; and (c) on a recurring basis;

2.       The total cost (or range of costs) the consumer will be Charged, including all shipping, handling, and processing fees and Charges, the date the initial

Charge will be submitted for payment, and, if applicable, the frequency of

such Charges unless the consumer timely takes affirmative steps to

prevent or stop such Charges;

3.      The deadline(s) (by date or frequency) by which the consumer must

affirmatively act in order to stop all recurring Charges, whether such

recurring charges are refundable, and the terms and conditions of any

refund, cancellation, exchange, or repurchase policy;

4.      The name of the seller or provider of the good or service;

5.      A description of the good or service;

6.      Any Charge or cost for which the consumer is responsible in connection

with the cancellation of an order or the return of a good; and

7.      A cancellation mechanism to stop any recurring Charges.

*Provided*, *however*, that for the purposes of this Section entitled "Required Disclosures," in

instances where Defendant, on behalf of a client, creates or develops advertising, or participates

or assists in the creation or development of advertising for a good or service, including but not

limited to drafting all or part of a radio or television script or producing a radio or television

commercial, and does not have an ownership interest in such good or service or own or license

the right to advertise such good or service, Defendant will have complied with its obligations

under this Section if it can establish that, after reasonable inquiry, it neither knew nor had reason

to know that any representation covered under this Section was false or misleading.

## IX.

## OBTAINING EXPRESS INFORMED CONSENT

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees,

16

and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from using or assisting others in using Billing Information to obtain payment from a consumer obtained through inbound Telemarketing, unless Defendant first obtains the express informed consent of the consumer to do so.  To obtain express informed consent, Defendant must, prior to obtaining any Billing Information from the consumer:

    A.    Clearly and Conspicuously disclose the information contained in the Subsection entitled Required Disclosures, VIII.B.; and

    B.    Obtain affirmative unambiguous express oral confirmation that the consumer: (a) consents to being Charged for any good or service; (b) understands that the transaction includes a Negative Option Feature; and (c) understands the specific affirmative steps the consumer must take to prevent or stop further Charges.

For transactions conducted through Telemarketing, Defendant must maintain for 3 years from the date of each transaction an unedited voice recording of the entire transaction (not including portions of the recording containing Billing Information), including the prescribed statements set out in this Section.  Each recording must be retrievable by date and by the consumer's name, or telephone number, and must be provided upon request to the consumer, the consumer's bank, or any law enforcement entity.

# X.

## MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

    A.    Judgment is hereby entered in favor of Plaintiffs and against Defendant in the

amount of $2,000,000 as equitable monetary relief;

B.     Defendant is ordered to pay to the Commission the entire judgment amount, which, as Defendant stipulates, its undersigned counsel holds in escrow for no purpose other than payment to the Commission and the State of Maine.  Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission;

C.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint.  Any money not used for such equitable relief is to be divided equally by Plaintiffs.  The Commission's portion of any money not used for equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Defendant has no right to challenge any actions Plaintiffs or their representatives may take pursuant to this Subsection;

D.     All money paid to the State of Maine pursuant to this Order must be deposited into the Attorney General's other special revenue account and used for consumer

education, consumer protection, antitrust enforcement, or for any other lawful purpose at the sole discretion of the Attorney General;

E.    Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets;

F.    The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of either of Plaintiffs, including in a proceeding to enforce their rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

G.    The facts alleged in the Complaint establish all elements necessary to sustain an action by either of Plaintiffs pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes; and

H.    Defendant acknowledges that its Taxpayer Identification Numbers (Employer Identification Number), which Defendant previously submitted to Plaintiffs, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

## XI.

## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.    Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Defendant obtained prior to entry of this Order in connection with the advertising, marketing, distribution, or sale of any formulation of AF Plus or Final Trim; and

B.    Failing to destroy such customer information in all forms in its possession, custody, or control within 30 days after receipt of written direction to do so from representatives of both the Commission and the Maine Attorney General's Office.

*Provided*, *however*, that customer information need not be destroyed, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XII.

## COOPERATION WITH FTC AND MAINE

**IT IS FURTHER ORDERED** that Defendant must fully cooperate with representatives of the Commission, the Maine AG, and any of their representatives in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Defendant must provide truthful and complete information, evidence, and testimony and must cause its officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a representative of the Commission or the Maine AG may reasonably request upon 5 days' written notice, or other reasonable notice, at such

places and times as a Commission or Maine AG representative may designate, without the service of a subpoena.

## XIII.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendant obtain acknowledgments of receipt of this Order:

A.   Defendant, within 7 days of entry of this Order, must submit to the Commission and the State of Maine an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.   For 20 years after entry of this Order, Defendant must deliver a copy of this Order to:

    1.   All principals, officers, directors, and LLC managers and members;

    2.   All employees, agents, and representatives who participate in the advertising, marketing, distribution, or sale of any Dietary Supplement, Food or Drug; and

    3.   Any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.

Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.   From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIV.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant make timely submissions to the

Commission and to the Maine AG:

A.      Ninety days after entry of this Order, Defendant must submit a compliance report,

sworn under penalty of perjury.  Defendant must:  (a) identify the primary

physical, postal, and email address and telephone number as designated points of

contact, which Plaintiffs' representatives may use to communicate with

Defendant; (b) identify all of Defendant's businesses by all of their names,

telephone numbers, and physical, postal, email, and Internet addresses; (c)

describe the activities of each business, including the goods and services offered

and the means of advertising, marketing, and sales; (d) describe in detail whether

and how Defendant is in compliance with each Section of this Order; and (e)

provide a copy of each Order Acknowledgment obtained pursuant to this Order,

unless previously submitted to Plaintiffs.

B.      For 10 years after entry of this Order, Defendant must submit a compliance

notice, sworn under penalty of perjury, within 14 days of any change in the

following.  Defendant must report any change in:  (a) any designated point of

contact; and (b) its structure or the structure of any entity that Defendant has any

ownership interest in or controls directly or indirectly that may affect compliance

obligations arising under this Order, including:  creation, merger, sale, or

dissolution of the entity or any subsidiary, parent, or affiliate that engages in any

acts or practices subject to this Order.

22

C.    For a period of 10 years, Defendant must submit to the Commission and the Maine AG notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within 14 days of its filing.

D.    Any submission to the Commission or the Maine AG required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEBrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Washington, D.C.  20580. The subject line must begin:  *FTC v. Marketing Architects, Inc.* and the number X_____.

F.    Unless otherwise directed by a Maine AG representative in writing, all submissions to the Maine AG pursuant to this Order must be sent by overnight courier (not the U.S. Postal Service) to:  Office of the Attorney General of Maine, Consumer Protection Division, 111 Sewall Street, 6th Floor, Augusta, ME  04330. The subject line must begin:  *Order in re State of Maine v. Marketing Architects, Inc.* and must identify the Court and docket number of this Order as assigned by the Court.

23

## XV.

### RECORDKEEPING

**IT IS FURTHER ORDERED** that in connection with the sale of any Dietary

Supplement, Food, or Drug, Defendant must create certain records for 10 years after entry of the

Order, and retain each such record for 5 years.  Specifically, Defendant must create and retain

the following records:

A.      Accounting records showing Defendant's revenues from all Dietary Supplements,

Foods, or Drugs sold, all costs incurred in generating those revenues, and the

resulting net profit or loss;

B.      Personnel records showing, for each person providing services, whether as an

employee or otherwise, that person's:  name; address; telephone numbers; job title

or position; dates of service; and (if applicable) the reason for termination;

C.      Complaints and full or partial refund requests, whether received directly or

indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this

Order, including all submissions to the Commission and the Maine AG; and

E.      A copy of each unique advertisement, Telemarketing script, or other marketing

material.

## XVI.

### COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendant's

compliance with this Order:

A.      Within 14 days of receipt of a written request from a representative of the

Commission or the Maine AG, Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  Plaintiffs are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.     For matters concerning this Order, Plaintiffs are authorized to communicate directly with Defendant.  Defendant must permit Plaintiffs' representatives to interview any employee or other person affiliated with Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.     Plaintiffs may use all other lawful means, including posing, through their representatives, as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.  Nothing in this Order limits the Maine AG's lawful use of compulsory process, pursuant to section 211 of the Maine UTPA, 5 M.R.S.A. § 211.  Defendant hereby consents to the disclosure by the Maine AG to any law enforcement agency, and any representative of the State of Maine, of any material or information produced by Defendant pursuant to section 211 of the Maine UTPA, whether produced before or after the date of this Order.

## XVII.

### RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED** this 16th day of February, 2018.


/s/  Nancy Torresen_____
United States Chief District Judge

**IT IS SO STIPULATED** this 31st day of January, 2018.

DAVID C. SHONKA
Acting General Counsel

/s/ James A. Prunty
James A. Prunty
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20580
Telephone: 202-326-2438
Facsimile:  202-326-3259
Email:  jprunty@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

JANET T. MILLS
Attorney General, State of Maine

/s/ Brendan F.X. O'Neil
Brendan F.X. O'Neil
Linda J. Conti
Assistant Attorney General

Office of the Attorney General of Maine
6 State House Station
Augusta, Maine 04333-0006
Telephone: 207-626-8842, 8591
Facsimile:  207-624-7730
Email:  brendan.oneil@maine.gov

**IT IS SO STIPULATED** this 31st day of January, 2018.


MARKETING ARCHITECTS, INC.
By:

/s/ Charles M. Hengel
CHARLES M. HENGEL, as an
owner and as Chief Executive Officer


ATTORNEYS FOR DEFENDANT


/s/ Paul D. Rubin
Paul D. Rubin
Melissa B. Runsten
*Pro Hac Vice* forthcoming
Attorneys for Defendant
Marketing Architects, Inc.
Debevoise & Plimpton LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone: 202-383-8000
Facsimile:  202-383-8118
Email:  pdrubin@debevoise.com


/s/ Peter J. Brann
Peter J. Brann
Brann & Isaacson
184 Main Street
PO Box 3070
Lewiston, Maine  04243
Telephone: 207-786-3566
Facsimile:  207-783-9325
Email:  pbrann@brannlaw

28